UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| FRANGIE ESPINAL, ON BEHALF OF HERSELF AND ALL OTHER PERSONS SIMILARLY SITUATED, | <u>ECF CASE</u> |
| Plaintiffs, | No.:1:24-cv-4898 |
| v. | **CLASS ACTION COMPLAINT** |
| CROSBY BOOT HOLDINGS, LLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>INTRODUCTION</u>

1.     Plaintiff, FRANGIE ESPINAL, on behalf of herself and all other persons similarly situated, asserts the following claims against Defendant, CROSBY BOOT HOLDINGS, LLC, as follows.

2.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet their definition have limited vision. Others have no vision.

3.     In a September 25, 2018 letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[1]

4.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually-impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually-impaired persons live in the State of New York.

5.      Plaintiff brings her civil rights action against CROSBY BOOT HOLDINGS, LLC, ("Defendant" or "Miron Crosby") for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

6.      Because Defendant's website, https://mironcrosby.com  (the "Website" or "Defendant's website"), is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

---

[1] *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018) (available at https://images.cutimes.com/contrib/content/uploads/documents/413/152136/adaletter.pdf) (last accessed July 13, 2020).

7.    By failing to make its Website available in a manner compatible with computer screen reader programs, Defendant deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among those persons that Title III was meant to redress.

8.    "When Congress enacted the ADA in 1990, it intended for the ADA to keep pace with the rapidly changing technology of our times. Since 1996, the Department of Justice has consistently taken the position that the ADA applies to web content." "Inaccessible web content means that people with disabilities are denied equal access to information. An inaccessible website can exclude people just as much as steps at an entrance to a physical location. Ensuring web accessibility for people with disabilities is a priority for the Department of Justice. In recent years, a multitude of services have moved online and people rely on websites like never before for all aspects of daily living." A website with inaccessible features can limit the ability of people with disabilities to access a public accommodation's goods, services, and privileges available through that website.[2] "For people with disabilities, website accessibility and other forms of accessible ICT are necessities—not luxuries or conveniences—that foster independence, economic self-sufficiency and active, meaningful participation in civic life. Although the Department has clearly stated that the ADA applies to such digital spaces, the lack of

---

[2] Justice Department Issued New Web Accessibility Guidance Under the Americans with Disabilities Act Titled <u>Guidance on Web Accessibility and the ADA</u> (This guidance describes how state and local governments and businesses open to the public can make sure that their websites are accessible to people with disabilities as required by the Americans with Disabilities Act (ADA). *https://beta.ada.gov/web-guidance/* *Published March 16, 2022.*

specific requirements or technical compliance standards incorporated in regulation has led to a widespread lack of meaningful digital accessibility for people with disabilities."[3]

<u>JURISDICTION AND VENUE</u>

9.      The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

10.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

11.     Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

12.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually-impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods,

---

[3] "United States Senate Committee on the Judiciary." *United States Senate Committee on the Judiciary*, https://www.judiciary.senate.gov/durbin-duckworth-letter-to-garland-re-accessible-websites. Last accessed, June 22, 2022.

and services of Defendant's Website while attempting to access the website from her home in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from visiting Defendant's Website. This includes, Plaintiff attempting to obtain information about Defendant's online retail merchandise.

13.    Defendant participates in New York's economic life by clearly performing business over the Internet. Through its Website, Defendant entered into contracts for the sale of its products and services with residents of New York. These online sales contracts involve, and require, Defendant's knowing and repeated transmission of computer files over the Internet. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *see also*, *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U. S. ____ (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products there.) *South Dakota v. Wayfair, Inc.*, 585 U. S. ____ (2018); *Godfried v. Ford Motor Co.*, 2021 US Dist LEXIS 87012 [D Me May 6, 2021, No. 1:19-cv-00372-NT]; *Romero v. 88 Acres Foods, Inc.*, 2022 US Dist LEXIS 9040 [SDNY Jan. 18, 2022, No. 20-CV-9215 (KMW)]); *Sanchez v. NutCo, Inc.*, 2022 US Dist LEXIS 51247 [SDNY Mar. 22, 2022, No. 20-CV-10107 (JPO)]; *Panarra v. HTC Corporation* [WDNY April 15, 2022, No. 6:20-cv-6991(FPG-MWP), DKT. 53].

14.     The Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>THE PARTIES</u>

15.     Plaintiff, FRANGIE ESPINAL, at all relevant times, is a resident of Bronx, New York.

16.     Plaintiff is a blind, visually-impaired handicapped person and a member of member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL.

17.     Defendant, CROSBY BOOT HOLDINGS, LLC, is and was, at all relevant times herein, a Texas Limited Liability Company with its principal place of business located at 25 Highland Park Village, Suite 201, Dallas, TX 75205. Defendant operates the Miron Crosby online retail store as well as the Miron Crosby website and advertises, markets, and operates in the State of New York and throughout the United States.

18.     Defendant, CROSBY BOOT HOLDINGS, LLC, operates the Miron Crosby online retail store across the United States. This online retail store constitutes a place of public accommodation. Defendant's Website provides consumers with access to an array of goods including information about purchasing boots, accessories and other products and services available online and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies on their website.

19.    Defendant's online retail store is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).[4] Defendant's Website is a service, privilege, or advantage of Defendant's online retail stores.

<u>NATURE OF ACTION</u>

20.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

21.    In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently utilize in order to access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

22.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech,

---

[4] [M]ultiple district courts in this circuit — including this one — have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store. *See Thorne*, 2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098, at *2; *see also Del-Orden*, 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at *5, 10). *Jaquez v. Dermpoint, Inc.*, *2021 US Dist LEXIS 96067, at *7-8 [SDNY May 20, 2021, No. 20-CV-7589 (JPO)]); Chalas v. Barlean's Organic Oils, LLC, 2022 US Dist LEXIS 211816 [SDNY Nov. 22, 2022, No. 22 Civ 04178 (CM)]; Martinez v. Gutsy LLC, 2022 US Dist LEXIS 214830 [EDNY Nov. 29, 2022, No. 22-CV-409 (NGG) (RLM)]; Slade v. Life Spectacular, Inc., 2022 US Dist LEXIS 220079 [SDNY Dec. 5, 2022, No. 22-CV-0037 (ALC)].*

otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

23.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

24.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

25.    Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually-impaired persons include, but are not limited to, the following:

a.    A text equivalent for every non-text element is not provided;

b.    Title frames with text are not provided for identification and navigation;

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sighted persons are not provided;

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

STATEMENT OF FACTS

Defendant's Barriers on Its Website

26.      Defendant offers the commercial website, https://mironcrosby.com to the public. The website offers features which should allow all consumers to access the goods and services offered by the Defendant and which Defendant ensures delivery of such goods throughout the United States including New York State. The goods and services offered by Defendant include, but are not limited to, the following, which allow consumers to: purchase boots, accessories and other products and services available online and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies on their website.

27.      It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered thereby. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's numerous goods, services and benefits offered to the public through the Website.

28.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Website on separate occasions using the JAWS screen-reader.

29.    During Plaintiff's visits to the Website, the last occurring on June 24, 2024, in an attempt to purchase the Brooke creme booties from the Defendant, the Plaintiff encountered multiple access barriers that denied Plaintiff a shopping experience similar to that of a sighted person and full and equal access to the goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the goods, and services of the Website by being unable to purchase boots, accessories and other products and services available online and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies on their website.

30.    Plaintiff visited the Website in order to purchase the Brooke creme booties. Plaintiff attempted to purchase the Brooke creme booties but was unable to locate pricing and was not able to add the item and/or items to the cart due to barriers on Defendant's Website which prevented her from doing so. Plaintiff has previously purchased footwear and accessories on the internet and wanted to patronize Defendant because the Defendant claims "In the BEST neutral on the market, Crosby crème, Brooke effortlessly combines cowboy boot tradition with classic fashion allure, ensuring you stand out from the crowd every time you reach for them."[5]

31.    The Plaintiff has suffered and continues to suffer frustration and humiliation as a result of the discriminatory conditions present on Defendant's website.

_____

[5]https://mironcrosby.com, last accessed June 24, 2024

These discriminatory conditions continue to contribute to the Plaintiff's sense of isolation and segregation.

32.    The Plaintiff has been discriminated against by the Defendant's conduct and violations of the statues and regulations set forth herein by being treated unequally from sighted persons due to the Plaintiff's disability and the Plaintiff has suffered and continues to suffer injury as a result of Defendant's discriminatory practices.

33.    The Plaintiff intends to immediately revisit the Website to purchase the Brooke creme booties from the Defendant as soon as the access barriers are removed from the Website.

34.    While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired persons that include, but are not limited to, the following:

a.    Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the keyboard moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, Defendant's visually-impaired customers are unable to determine what is on the website, browse, or make any purchases;

b.    Empty Links That Contain No Text causing the function or purpose of the link to not be presented to the user. They can introduce confusion for keyboard and screen-reader users;

c.    Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d.    Linked Images Missing Alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

35.    Many pages on the Website also contain the same title elements. This is a problem for the visually-impaired because the screen reader fails to distinguish one page from another. In order to fix this problem, Defendant must change the title elements for each page.

36.    The Website also contained a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually-impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered. For example, upon coming across a link of interest, Plaintiff was redirected to an error page. However, the screen-reader failed to communicate that the link was broken. As a result, Plaintiff could not get back to her original search.

<u>Defendant Must Remove Barriers To Its Website</u>

-13-

37.     Due to the inaccessibility of Defendant's Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the goods, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Website.

38.     These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's Website and enjoying it equal to sighted individuals because: Plaintiff was unable to use and enjoy the Website in the same manner as sighted individuals do, preventing Plaintiff from using the Website to purchase the Brooke creme booties and to view the items.

39.     If the Website was equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

40.     Through her attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired persons.

41.     Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.     Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failure to construct and maintain a website that is not sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

42.    Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

43.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

44.    Because Defendant's Website is not and has never been fully accessible, and because, upon information and belief, Defendant does not have, and has never had, adequate corporate policies that are reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring Defendant to:

a) Retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist in improving the accessibility of its Website, including all third-party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by visually-impaired persons;

b) Work with the Web Accessibility Consultant to ensure all employees involved in Website and content development be given web accessibility training on a

biennial basis, including onsite training to create accessible content at the design and development stages;

c) Work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by visually-impaired persons on an ongoing basis;

d) Work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e) Incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f) Work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems;

g) Directly link from the footer on each page of its Website, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that visually-impaired persons have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant's Website;

h) Accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i) Provide a notice, prominently and directly linked from the footer on each page of its Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j) Provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k) Train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website.

Defendant shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

l) Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology; and

m) Plaintiff, her counsel, and their experts monitor the Website for up to two years after the Mutually Agreed Upon Consultant validates the Website are free of accessibility errors/violations to ensure Defendant has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through her counsel and their experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides Defendant.

45.    Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by visually-impaired persons.

46.    If the Website was accessible, Plaintiff and similarly situated blind and visually-impaired persons could independently shop for and otherwise research the Defendant's products via the Website.

47.    Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably

calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

48.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their Website equally accessible to visually-impaired consumers.

49.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

<u>CLASS ACTION ALLEGATIONS</u>

50.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant statutory period.

51.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York State Sub-Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant statutory period.

52.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York City Sub-Class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's

Website and as a result have been denied access to the equal enjoyment of goods and services offered by Defendant's Website, during the relevant statutory period.

53.     Common questions of law and fact exist amongst the Class and Sub-Classes, including:

a.     Whether Defendant's Website is a "public accommodation" under the ADA;

b.     Whether Defendant's Website is a "place or provider of public accommodation" under the NYSHRL or NYCHRL;

c.     Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to visually-impaired persons, violating the ADA; and

d.     Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to visually-impaired persons, violating the NYSHRL or NYCHRL.

e.     Whether Defendant's website and the unequal treatment of visually-impaired persons constitutes unlawful discrimination.

54.     Plaintiff's claims are typical of the Class and Sub-Classes. The Class, and Sub-Classes, similarly to the Plaintiff, are severely visually-impaired or otherwise blind persons, and claim that Defendant has violated the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the Class and/or the Sub-Classes.

55.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent

and experienced in complex class action litigation, including ADA litigation and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

56.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions are common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of their litigation.

57.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by visually-impaired persons throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

58.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

60.     Defendant's online retail store is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or advantage of Defendant's online retail store

61.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

62.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

63.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

64.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of

persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

65.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYSHRL

66.    Plaintiff, on behalf of herself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67.    N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

68.    Defendant's Website operates in the State of New York and constitutes an online sales establishment and a place of public accommodation within the definition of N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant's online retail establishment.

69.    Defendant is subject to New York Human Rights Law because it owns and/or operates its Website in the State of New York. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

70.    Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated therewith to be completely inaccessible to the blind. Their inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

71.    Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden".

72.    Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

73.    Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have

been followed by other large business entities and government agencies in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

74.     Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant has:

a.     constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.     constructed and maintained a website that is not sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

75.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

76.     Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and New York State Sub-Class Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the Sub-Class Members will continue to suffer irreparable harm.

77.    Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

78.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

79.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

80.    Under N.Y. Exec. Law § 297 and the remedies, procedures and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>THIRD CAUSE OF ACTION</u>
VIOLATIONS OF THE NYCHRL

81.    Plaintiff, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

83.    Defendant's website is an online sales establishment and a place of public accommodation within the definition of N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with its online sales establishment.

84.    Defendant is subject to NYCHRL because it owns and/or operates its Website in the City of New York, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

85.    Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing its Website and the services integrated therewith to be completely inaccessible to the blind. The inaccessibility denies blind consumers full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

86.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

87.    Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

a.    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.    constructed and maintained a website that is not sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

-26-

88.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

89.     As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and members of the proposed class and Sub-Class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Sub-Class will continue to suffer irreparable harm.

90.     Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

91.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

92.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

93.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.

Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b.      A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq*., N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and Sub-Classes for violations of their civil rights under New York State Human Rights Law and City Law;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of the action; and

h.      Reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see    Gniewkowski    v.    Lettuce    Entertain    You    Enterprises,    Inc*., Case    No.

-28-

2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. *See also, Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11); and

          i.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       June 27, 2024

**GOTTLIEB & ASSOCIATES PLLC**

*<u>/s/Michael A. LaBollita, Esq.</u>*

Michael A. LaBollita (ML-9985)
Jeffrey M. Gottlieb (JG-7905)
Dana L. Gottlieb (DG-6151)
GOTTLIEB & ASSOCIATES PLLC
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
Michael@Gottlieb.legal
Jeffrey@gottlieb.legal
Dana@Gottlieb.legal

*Attorneys for Plaintiffs*
